# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | |
|---|---|
| JOSHUA HACKWORTH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-190 |
| ) | |
| HARRIMAN UTILITY BOARD, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes Plaintiff Joshua Hackworth, by and through counsel, and, for his Complaint against Defendant Harriman Utility Board, states as follows:

## INTRODUCTION TO THE ACTION

1. Plaintiff's wife had serious medical conditions and Plaintiff requested FMLA leave from work to assist her. Shortly thereafter, Plaintiff was injured on the job and requested the benefits to which he was entitled under Tennessee's worker's compensation laws. Defendant refused to provide Plaintiff with (and otherwise interfered with Plaintiff's use of) the FMLA leave to which he was entitled. Further, after Plaintiff requested worker's compensation benefits and requested FMLA leave, Defendant began a campaign to document pretextual alternative reasons to discipline and, ultimately, terminate Plaintiff. Based on these pretextual reasons (but for the actual reason that Plaintiff requested worker's compensation benefits and/or requested Family and Medical Leave Act leave), Defendant terminated Plaintiff's employment.

## Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law, including the Family and Medical Leave Act, 29 U.S.C. § 1601 *et seq.* ("FMLA").

3. This Court has and should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims under Tennessee common law because they are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and arise from the same set of operative facts as Plaintiffs' claims under federal law.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendant's primary place of business is located in, Plaintiff worked for Defendant in, and the majority of, if not all, the acts complained of herein occurred in, Harriman, Roane County, Tennessee within the District of this Court.

## Parties

5. Plaintiff is an individual former employee of Defendant; throughout his employment with Defendant, which began in approximately the year 2009, Plaintiff resided and worked for Defendant in the State of Tennessee.

6. Defendant is a utility operating in Harriman, Roane County, Tennessee; upon information and belief, Defendant may be served by service of process on its General Manager, Candace Vannasdale.

7. Throughout 2019 and from January 1, 2020 until May 21, 2020, Plaintiff was an "employee" of Defendant and Defendant was Plaintiff's "employer" as those terms are used under 29 U.S.C. § 2611(3) (incorporating definitions from 29 U.S.C. § 203), 29 U.S.C. § 203(d) and (e) and 29 C.F.R. § 825.102.

8. Throughout 2019 and from January 1, 2020 until May 21, 2020, Plaintiff was an "eligible employee" within the meaning of the FMLA, including 29 U.S.C. §§ 2611(2); 29 C.F.R. § 825.102; 29 C.F.R. § 825.110; 29 C.F.R. § 825.112(a)(4).

9. Specifically, throughout 2019 and from January 1, 2020 until May 21, 2020, Plaintiff had been employed for a total of more than twelve months by Defendant.

10. Further, throughout 2019 and from January 1, 2020 until May 21, 2020, Plaintiff had been employed by Defendant for more than 1,250 hours[1] during the previous twelve-month period.

11. Throughout 2019 and from January 1, 2020 until May 21, 2020, Defendant was a "employer" covered under the FMLA within the meaning of 29 U.S.C. §§ 2611(4)(A)(ii)(I) and (iii), 29 U.S.C. §§ 2611(4)(B), 29 C.F.R. § 825.102, 29 C.F.R. §§ 825.104(a) and (d), and 29 C.F.R. §§ 825.108.

12. Specifically, Defendant is, and has since prior to 2019 been, engaged in commerce or in any industry or activity affecting commerce (Defendant is a utility and provides water, sewer, natural gas, and electricity to residential, commercial and industrial customers).

---

[1] Plaintiff has brought a separate action relating to Defendant's violation of the Fair Labor Standards Act. See Complaint in Case 3:21-cv-114 in this Court. The allegations in this Complaint and the allegations in Plaintiff's Complaint in Case 3:21-cv-114 are distinct; the allegations in Case 3:21-cv-114 relate to Defendant's nonpayment of wages, while the allegations in this case relate to actions by Defendant relating to Plaintiff's medical leave and termination. However, Plaintiff notes that a requirement of FMLA coverage is that the employee has worked more than 1,250 hours in the 12 months preceding the date on which any FMLA leave is to commence. Although, as discussed in much greater detail in Case 3:21-cv-114, Defendant did not credit Plaintiff with all hours which Plaintiff worked (a fact Defendant has denied in Case 3:21-cv-114 and which Plaintiff does not request Defendant respond to here), Defendant did credit Plaintiff with having worked more than 1,250 hours preceding all dates in 2019 and in 2020 through May 20, 2021. Therefore, Plaintiff met the 1,250 hours requirement at all times noted in the text even based solely in reference to the amount of hours Defendant paid Plaintiff for working, whether or not it failed to credit Plaintiff with all of the work he performed.

13. Further, throughout 2019 and from January 1, 2020 through May 1, 2020, Defendant employed fifty or more employees each working day during each of twenty or more calendar workweeks in the then-current or then-preceding calendar year.

14. Defendant is a "public agency" as defined in 29 U.S.C. § 203(x), which is incorporated into the FMLA by 29 U.S.C. § 2611(4)(a)(iii)

**Facts**

15. Throughout 2019, until the injury described below, Plaintiff worked for Defendant as a right-of-way worker in Defendant's right-of-way department, which was responsible for maintaining utility rights-of-way, generally by cutting and otherwise addressing brush and vegetation which would encroach upon the right-of-way if not addressed.

16. Defendant's wife has suffered from serious back conditions that have required multiple back surgeries.

17. In October, 2019 through December, 2019, Plaintiff's wife's medical condition constituted a "serious health condition" within the meaning of the FMLA, including under 29 U.S.C. §§ 2611(11)(B), 29 C.F.R. § 825.102, and 29 C.F.R. § 825.113(a).

18. In 2019, Plaintiff submitted a request for FMLA leave to be able to care for his wife.

19. Defendant, including its General Manager Candace Vannasdale, did not want Plaintiff to be able to use FMLA leave.

20. On November 25, 2019, after Plaintiff submitted to Defendant his request for FMLA leave to care for his spouse, Defendant's General Manager Candace Vannasdale sent Plaintiff the letter attached hereto as Exhibit 1.

21. On November 26, 2019, after Plaintiff submitted to Defendant his request for

FMLA leave to care for his spouse, Connie Voyles, Defendant's Human Resource Manager, texted Plaintiff that "Candace wanted additional information on your FMLA since some questions were vague and not answered clearly. She also wanted a new form completed so it would be a cleaner copy with no strikeouts."

22. Plaintiff submitted a revised FMLA form, in which Plaintiff's spouse's physician noted that Plaintiff would be needed to provide medical care for Plaintiff's spouse during "flare-ups" 1-3 times per month for 1-2 days per episode.

23. A copy of the revised FMLA form (with Plaintiff's wife's date of birth redacted) is attached hereto as Exhibit 2.

24. Plaintiff had an "entitlement to leave" within the meaning of the FMLA (including under 29 U.S.C. §§ 2612(a)(1)(C) and (D); 29 C.F.R. § 825.102) in order to care for his wife, given her health condition, in the manner described in the revised FMLA form.

25. Without any medical or other basis to do so, Defendant informed Plaintiff that he would be permitted by Defendant to utilize some of the FMLA leave he had requested, but not all of it; Defendant indicated that Plaintiff could not utilize FMLA leave to care for his wife as many times a month as Plaintiff's wife's medical provider had indicated Plaintiff's wife would need care from Plaintiff.

26. Further, while Defendant would ordinarily accept doctor's excuses from other employees who did not request FMLA leave and did not claim worker's compensation benefits, and would do so without questioning the validity of the doctor's excuse, scheduling of the doctor's appointment, or other similar scrutiny, Defendant began arguing with Plaintiff regarding the amount of time that he should take off, whether or not doctors' appointments were scheduled at the appropriate time, and whether a doctor's appointment should excuse a particular time away

from work.

27. Defendant even began calling Plaintiff's spouse's medical providers to verify that Plaintiff's spouse did in fact attend her medical appointments.

28. Defendant also would, during those telephone calls, ask questions about Plaintiff's spouse's care, despite knowing that HIPAA prohibited the medical providers from disclosing medical information to third parties such as Defendant other than as expressly authorized by Plaintiff's spouse under 42 C.F.R. § 164.508(b).

29. In December, 2019, Plaintiff suffered an on-the-job injury to his shoulder and lower back.

30. Plaintiff requested that his injury be treated as a workplace injury and that he be provided benefits under Tennessee's worker's compensation law.

31. Following Plaintiff requesting FMLA leave to care for his wife and requesting worker's compensation benefits relating to his on-the-job injury, Defendant began imposing discipline upon Plaintiff for minor violations of policy which other employees (who had not requested FMLA leave and had not requested worker's compensation benefits) were not disciplined for engaging in (or for which such other employees were not provided with as serious of discipline as was imposed upon Plaintiff).

32. For instance, on or about March 6, 2020, Mr. Hackworth received a written warning, and he was suspended for three days without pay for clocking in one (1) minute after the scheduled beginning of his work shift on March 4, 2020.

33. Other employees who were similarly-situated to Plaintiff but who did not make a worker's compensation claim and did not request FMLA leave committed similar "violations" as Plaintiff by clocking in after the scheduled beginning of his or her work shift; however, most of

these other employees were not disciplined for clocking in after the scheduled beginning of his or her work shift.

34. Some other employees were similarly-situated to Plaintiff and were disciplined for their "violation" of clocking in after the scheduled beginning of his or her work shift; however, such employees who clocked in late but who did not make a worker's compensation claim and did not request FMLA leave did not receive discipline in the form of a written warning or a suspension for one or more days without pay for their "violation."

35. Instead, such employees would, at the most, be "docked" pay from the time the employee clocked in until the first fifteen-minute increment after the employee clocked in (despite the employee working from the time the employee clocked in until such fifteen-minute increment), although the employee would be eligible to still receive pay for the period from the scheduled beginning of the shift until the first fifteen-minute increment after the scheduled beginning of the shift by using one-quarter of a "Paid Time Off" hour.

36. Indeed, Defendant itself noted on Plaintiff's timecard for the period ending January 24, 2020 that Defendant had "spoke with Josh Re: Late will begin docking time the same as all other employees."

37. Plaintiff's timecard for the period ending January 24, 2020 is attached hereto as Exhibit 3.

38. Further, Defendant's timecard records reflect that Defendant had adopted this policy of "docking" employees' time when employees would clock-in late.

39. For instance, attached hereto as Exhibit 4 is the timecard for employee Jessie Russell for the pay period ending March 5, 2021.

40. Upon information and belief, Ms. Russell had not requested worker's compensation

7
Case 3:21-cv-00190-TAV-DCP   Document 1   Filed 05/21/21   Page 7 of 13   PageID #: 7

benefits or requested FMLA leave within the six months preceding her activity of clocking in one minute late on February 23, 2021.

41.     Defendant "docked" Ms. Russell fifteen minutes for clocking-in one minute late on February 23, 2021.

42.     Upon information and belief, Defendant did not give Ms. Russell a "written warning" form of discipline (which was a separate type of document than the short notation on Exhibit 4) for clocking-in one minute late on February 23, 2021.

43.     Upon information and belief, Defendant was not suspended without pay for one or more days for clocking-in one minute late on February 23, 2021.

44.     Defendant did not give Ms. Russell or its other employees who clocked-in one minute late but did not make a worker's compensation claim or request FMLA leave any written warning or suspension for one or more days without pay; instead, at most, like it did for Ms. Russell, Defendant refused to pay the employee in question for work performed from the time the employee clocked-in after the scheduled beginning of that employee's shift until the fifteen minute increment after the employee clocked-in.

45.     The real reason Plaintiff was disciplined (and ultimately terminated) was not because of the violations which Defendant stated were the reasons for his discipline (and ultimate termination), but because Plaintiff requesting FMLA leave to care for his wife or because Plaintiff requested worker's compensation benefits relating to his on-the-job injury, or some combination of both.

46.     Plaintiff was terminated on May 21, 2020.

47.     Defendant provided Plaintiff with a document relating to his termination, a copy of which is attached hereto as Exhibit 5.

48. On May 21, 2020, after Plaintiff was terminated, Heath Lewis, a manager of Defendant, stated to Plaintiff "when issues are brought to the office, it never ends good."

49. After Plaintiff was terminated, Defendant's General Manager Candace Vannasdale sent the email attached hereto as Exhibit 6.

50. Defendant's illegal termination of Plaintiff caused Plaintiff damages, including but not limited to lost pay, lost benefits, and emotional distress.

## COUNT I

## INTERFERENCE WITH PLAINTIFF'S FLSA RIGHTS

51. Plaintiff incorporates into this County all facts asserted above and below.

52. Defendant's refusal to permit Plaintiff to utilize the FMLA leave to which he was entitled resulted in Plaintiff not being permitted to take the FMLA leave to which he was entitled.

53. Plaintiff suffered damages as a result of Defendant's interference with Plaintiff's right to utilize the FMLA leave to which he was entitled.

## COUNT II

## TERMINATION IN RETALIATION FOR PLAINTIFF'S REQUESTING AND USING FMLA LEAVE

54. Defendant unlawfully disciplined, and then terminated, Plaintiff in retaliation for Plaintiff exercising or attempting to exercise his entitlement to leave pursuant to the FMLA, in violation of 29 U.S.C. § 2615(a)(2) and 29 U.S.C. § 2614(a)(1).

55. Plaintiff has suffered damages in lost wages, salary, employment benefits, and/or other denied or lost benefits by reason of Defendants' retaliation and violation of the FMLA's leave entitlement provision, 29 U.S.C. § 2617(a)(1)(A)(i)(I).

56. As a direct and proximate result of Defendants' unlawful retaliation against him, Plaintiff is entitled to interest on damages incurred pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(I), calculated at the prevailing rate, 29 U.S.C. § 2617(a)(1)(A)(ii).

57. As a direct and proximate result of Defendants' unlawful retaliation against him, Plaintiff is entitled to an additional amount of liquidated damages equal to the sum prescribed by 29 U.S.C. § 2617(a)(1)(A)(i)(I), along with interest as prescribed by 29 U.S.C. § 2617(a)(1)(A)(ii).

58. As a direct and proximate result of Defendants' unlawful retaliation against him, Plaintiff is entitled to such equitable relief as may be appropriate, including employment, reinstatement, and promotion. 29 U.S.C. § 2617(a)(1)(B).

## COUNT III

## TENNESSEE COMMON LAW RETALIATORY DISCHARGE

59. Plaintiff incorporates into this Count all facts asserted above and below.

60. A substantial factor in Defendants' decision to terminate his employment was due to the exercise of his rights pursuant to the Tennessee Workers' Compensation Law, Tenn. Code Ann. § 50-6-101, *et seq*.

61. Defendants' actions in terminating Plaintiff's employment were retaliatory in nature and contrary to the common law of Tennessee, as articulated by the Tennessee Supreme Court and/or public policy of the State of Tennessee.

62. Because Defendant's termination of Plaintiff for exercising his rights pursuant to the Tennessee Workers' Compensation Law was made willfully, maliciously, and intentionally (and willfully, maliciously, and intentionally documented by Defendant as occurring for other, false and pretextual reasons), punitive damages should be awarded against Defendant in an amount

sufficient to deter Defendant and other employers from engaging in similar illegal conduct in the future.

## COUNT IV

## TERMINATION IN VIOLATION OF TENNESSEE PUBLIC PROTECTION ACT

63. Plaintiff incorporates into this Count all facts asserted above and below.

64. Defendant terminated Plaintiff's employment solely due to the exercise of his rights pursuant to the Tennessee Workers' Compensation Law, Tenn. Code Ann. § 50-6-101, *et seq*.

65. Defendant's act of terminating Plaintiff violated the Tennessee Public Protection Act, and Plaintiff should be granted the remedies available thereunder.

66. Because Defendant's termination of Plaintiff for exercising his rights pursuant to the Tennessee Workers' Compensation Law was made willfully, maliciously, and intentionally (and willfully, maliciously, and intentionally documented by Defendant as occurring for other, false and pretextual reasons), punitive damages should be awarded against Defendant in an amount sufficient to deter Defendant and other employers from engaging in similar illegal conduct in the future.

**WHEREFORE**, Plaintiff respectfully prays that the Court grant Plaintiff the following relief and all other relief to which he may be entitled:

A. A trial by jury;

B. A judgment that Defendant has violated the anti-interference and anti-retaliation provisions of the FMLA as to Plaintiff;

C. A judgment against Defendants for compensatory damages, back pay, reinstatement or front pay, and liquidated damages;

D. An award to Plaintiff for pre- and post-judgment interest;

E. An award of reasonable attorney's fees and costs pursuant to the FMLA, including under 29 U.S.C. § 2617(a)(3);

F.  An award of punitive damages under state law; and

G.  Any other relief to which Plaintiff may be entitled, or which the Court otherwise deems appropriate.

Respectfully submitted,

By: /s/ Mark N. Foster
Mark N. Foster (#023636)
Law Office of Mark N. Foster, PLLC
P.O. Box 869
Madisonville, KY 42431
(270) 213-1303
MFoster@MarkNFoster.com
*Counsel for Plaintiff Joshua Hackworth*